UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Sharon Lasitter,

      Plaintiff,

      v.                                  Civil Action No. 2:12-CV-112

Michael J. Astrue,
Commissioner of Social Security,

      Defendant.

## OPINION AND ORDER
(Docs. 6, 10)

Plaintiff Sharon Lasitter brings this action pursuant to 42 U.S.C. § 405(g) of the

Social Security Act, requesting review and remand of the decision of the Commissioner

of Social Security ("Commissioner") denying her application for disability insurance

benefits. Pending before the Court are Lasitter's motion to reverse the Commissioner's

decision (Doc. 6), and the Commissioner's motion to affirm the same (Doc. 10). For the

reasons stated below, the Court DENIES Lasitter's motion, and GRANTS the

Commissioner's.

## Background

Lasitter was forty-seven years old on the alleged disability onset date of

August 1, 2009. She has a high school education, has taken college courses in art and

psychology, and is certified as a life coach. She has work experience as an operator in a

textile plant, a life coach, and a housekeeper at a hotel. She is divorced, has an adult son,

and was living with her boyfriend during the alleged disability period. (AR 43.)

Lasitter suffers from chronic fatigue syndrome ("CFS") and fibromyalgia, among other ailments. She testified at the administrative hearing that she has severe headaches; and daily, "fairly constant" pain in her head, neck, shoulders, back, hips, and legs. (AR 43-44.) She further stated that, in an effort to alleviate her pain, she lays down for anywhere between two and four hours a day. (AR 45.) Lasitter testified that she suffers from gastroesophageal reflux disease ("GERD") and occasional irritable bowel syndrome ("IBS"); and has difficulty reaching, lifting, sitting, standing, bending, and walking due to pain. (AR 45-48.) Despite her pain and other problems, she stated that she is able to prepare very simple meals, wash dishes, occasionally tidy up around the house, and keep in touch with friends via Facebook. (AR 45, 52-53.) She watches television for approximately four hours each day, and does very little socializing because she feels overwhelmed and confused when she is around other people. (AR 53-54.)

On December 9, 2009, Lasitter filed applications for social security income and disability insurance benefits. In her disability application, she alleged that, starting on August 1, 2009, she has been unable to work due to CFS, which she described as "persistent or recurring profound fatigue." (AR 161.) She explained that her CFS resulted in "a substantial reduction in work and social/personal activities," as well as loss of short-term memory, inability to concentrate, sleep problems, sore throat, muscle pain, tender lymph nodes, severe headaches, malaise, heat/cold intolerance, inability to sit for long periods, and inability to lift or carry heavy objects. (*Id.*) She stated: "The combination of pain, fatigue[,] and congative [sic] issues halt or severely limit my ability to maintain the stamina and capacity to work." (*Id.*)

2

Lasitter's disability application was denied initially and upon reconsideration, and she timely requested an administrative hearing, which was conducted on June 30, 2011 by Administrative Law Judge ("ALJ") Robert Klingebiel. (AR 33-57.) Lasitter appeared and testified, and was represented by an attorney. On August 2, 2011, the ALJ issued a decision finding that Lasitter was not disabled under the Social Security Act at any time from her alleged onset date through the date of the decision. (AR 15-24.) Thereafter, the Appeals Council denied Lasitter's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 2.) Having exhausted her administrative remedies, Lasitter filed the Complaint in this action on May 29, 2012. (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Klingebiel first determined that Lasitter had not engaged in substantial gainful activity since her alleged onset date of August 1, 2009. (AR 17.) At step two, the ALJ found that Lasitter had the severe impairments of fibromyalgia and affective disorder. (AR 18.) At step three, the ALJ found that neither of Lasitter's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 18-19.) Next, the ALJ determined that Lasitter had the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), except that she was "limited to understanding, remembering, and carrying out simple instructions." (AR 19.)

Given this RFC, the ALJ found that Lasitter was capable of performing her past relevant work as a housekeeper, which the ALJ noted is an "unskilled, light occupation" under the Dictionary of Occupational Titles. (AR 23.) The ALJ concluded that Lasitter had not been under a disability from the alleged onset date of August 1, 2009 through the date of the decision. (AR 23-24.)

<u>**Standard of Review**</u>

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v.*

*Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d

Cir. 1990) ("Where there is substantial evidence to support either position, the

determination is one to be made by the fact[-]finder."). "Substantial evidence" is more

than a mere scintilla; it means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social

Security Act is "a remedial statute to be broadly construed and liberally applied."

*Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

### I.     Credibility Determination

Lasitter argues that the ALJ's credibility determination "is based on irrelevant

evidence and is not supported by substantial evidence." (Doc. 6 at 12.) She accurately

points out that, in the context of assessing Lasitter's credibility, the ALJ discussed an

email which has since been removed from the record because it "referenced another

claimant." (AR 376-78; *see* AR 21 ("[the] e-mail[] suggests that [Lasitter] was

encouraged to amplify her subjective complaints in an effort to seek disability benefits,

rather than for the purpose[] of obtaining medical treatment").) Even accepting this error,

however, it was harmless, given that (a) the ALJ identified sufficient other reasons to

support his credibility determination, and (b) substantial evidence supports that

determination, as discussed below. *See Fitzgerald v. Astrue*, No. 2:08-cv-170, 2009 WL

4571762, at *9 (D. Vt. Nov. 30, 2009) (holding ALJ error which does not negate validity

of ALJ's ultimate conclusion is harmless and thus does not warrant reversal); *see also*

*Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.") (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

It is well established that the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record, and "is not obliged to accept without question the credibility of . . . subjective evidence [of the claimant's pain]." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Even when accepted as true, the claimant's subjective assertions of pain alone cannot ground a finding of disability. 20 C.F.R. § 404.1529(a). The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529(b). If the claimant suffers from such an impairment, at the second step, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). Because "an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone," SSR 96-7p, 1996 WL 374186, at *3, an ALJ will consider the factors listed in the regulations to determine the impairment's severity. Those factors are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's symptoms; (3) precipitating

and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; (5) other treatment received to relieve the symptoms; (6) any measures taken by the claimant to relieve the symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to the symptoms.  20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

"When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given [thereto]."  SSR 96-7p, 1996 WL 374186, at *4.  If the ALJ rejects the claimant's subjective complaints of pain, he must do so "'explicitly and with sufficient specificity to enable the [c]ourt to decide whether there are legitimate reasons for the ALJ's disbelief.'" *Young v. Astrue*, No. 7:05-CV-1027 (NAM/GHL), 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). Importantly, the court's review of the ALJ's credibility determination is limited, as it is the province of the Commissioner, not the reviewing court, to "appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984); *see Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (holding ALJ is in better position to decide credibility).  If the Commissioner's findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints.  *Aponte*, 728 F.2d at 591 (citing *McLaughlin v. Sec'y of Health, Educ., and Welfare*, 612 F.2d 701, 704 (2d Cir. 1980)).

Here, the ALJ applied the above-described two-step process to assess whether Lasitter's asserted limitations were credible.  After reciting Lasitter's allegations and

testimony regarding her inability to work principally due to chronic pain, weakness, and fatigue; the ALJ found that "[Lasitter's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (AR 19-20.) The ALJ then discussed Lasitter's medical records, her self-reported daily activities, and the medical opinion evidence, providing reasons for his decision that Lasitter was not entirely credible. (AR 20-23.)

Specifically, the ALJ found that the objective medical evidence, including diagnostic testing and clinical examinations, did not support the level of limitation Lasitter claimed; but rather, indicated that Lasitter's physical functioning was "essentially normal." (AR 20.) This finding is accurate. Despite Lasitter's testimony at the administrative hearing that she had fairly constant pain throughout virtually every area of her body and had difficulty walking, standing, bending, reaching overhead, and comfortably lifting anything over four pounds (AR 43-48); her radiologic evidence, lab results, and physical examinations revealed basically no abnormalities other than a treatable Vitamin D deficiency and fibromyalgia tender points (*see, e.g.,* AR 220-22, 260, 426-29). She was reported to have normal range of motion in the extremities, neck, and spine; full strength, reflexes, and sensation; and a normal gait. (*See, e.g.,* AR 222, 228, 260, 428-29.) The ALJ also discussed Lasitter's activities of daily living, accurately noting that she was able to engage in "regular activities of daily living," such as simple cooking and cleaning, communicating with friends via Facebook and e-mail, and

maintaining a relationship with her boyfriend. (AR 21; *see* AR 45, 52-53, 180, 296.)

The record further demonstrates that Lasitter had been able to drive on occasion and

exercise five times/week.[1] (AR 180, 183, 295, 355.) It is well established that an ALJ

may consider a claimant's daily activities in assessing the claimant's credibility. *See,*

*e.g., Calabrese v. Astrue*, 358 F. App'x 274, 278 (2d Cir. 2009) (citing 20 C.F.R. §

404.1529(c)(3)).

The ALJ also could have considered in support of his credibility determination

that Lasitter failed to comply with treatment recommendations, including following a

physical therapy program and seeking a referral for pain management services. (*See* AR

375 ("[d]ismiss[ed] need for pain [management] referral"), 391 (at initial physical

therapy appointment in August 2010, a plan was created, including "see[ing] patient 1-2x

a week as needed"), 400 (in October 2010, physical therapist wrote: "[Lasitter] has not

kept or made any additional appointments to continue care").) Courts have held that

noncompliance with treatment recommendations may serve as a basis for dismissing a

claimant's subjective complaints. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th

Cir. 2001); 20 C.F.R. § 404.1530(b) ("If you do not follow the prescribed treatment

without a good reason, we will not find you disabled.").

In sum, the Court is satisfied that the ALJ used the proper legal standards in

analyzing Lasitter's complaints of pain. Further, the ALJ's decision contains enough

detail for the Court to discern the reasons on which the ALJ relied in discounting

---

[1] At the administrative hearing, however, Lasitter testified that she allowed her driver's license to expire in the summer of 2010, relying on her boyfriend to transport her to appointments. (AR 50-51.)

Lasitter's allegations of disabling pain. Finally, there is substantial evidence—including

the objective medical evidence, Lasitter's daily activities, and Lasitter's failure to comply

with treatment recommendations—supporting the ALJ's decision to discredit Lasitter's

allegations regarding the extreme limitations caused by such pain. While another fact-

finder could view this evidence in a light more favorable to Lasitter, the Court may not

substitute its own credibility determination for that of the ALJ's unless the latter was

"patently unreasonable," which was not the case here. *Pietrunti v. Dir., Office of*

*Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("Credibility findings of

an ALJ are entitled to great deference and therefore can be reversed only if they are

patently unreasonable.") (quotation marks omitted).

## II.     Analysis of Dr. Fama's Opinion

In June 2011, after examining Lasitter on two occasions, rheumatologist Dr.

Teresa Fama opined that Lasitter could not lift any object for a continuous period of time;

could sit for only one hour at a time, stand for only ten minutes at a time, and walk for

only twenty minutes at a time; could sit for only four hours in an eight-hour workday, and

stand and walk for less than one hour in an eight-hour workday; needed to lay down for a

minimum of four hours each day due to fatigue; and needed to change positions at will

due to discomfort. (AR 418-19.) She further opined that any repetitive motion of the

hands, wrists, elbows, or lower back caused Lasitter pain and dizziness; and any

repetitive motion of the joints caused pain and fatigue. (AR 420.) Finally, Dr. Fama

opined that Lasitter had "frequent unexplained dizziness"; pain with stooping, kneeling,

11

and crawling; phobia of heights; and fear of going outside unaccompanied by another person.  (AR 421-22.)

The ALJ gave "little weight" to Dr. Fama's opinions, finding them to be "inconsistent with the medical evidence of record, including [the Doctor's] own record of treatment."  (AR 22.)  The ALJ further found that the objective medical evidence "simply does not substantiate [the] profound functional limitations [included in Dr. Fama's opinions]."  (*Id.*)  Lasitter argues that the ALJ erred in his analysis of Dr. Fama's opinions by failing to follow the "treating physician rule" and failing to give "good reasons" for the limited weight afforded to Dr. Teresa Fama's opinion about Lasitter's fibromyalgia.  (Doc. 6 at 12-16.)

Lasitter's argument fails for two reasons.  First, Dr. Fama treated Lasitter on only two occasions—November 4, 2009 and June 27, 2011—and thus did not have an ongoing treatment relationship with her and was not a "treating physician" for purposes of the treating physician rule.  *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (treating sources who see a patient only once or twice do not have a chance to develop an ongoing relationship with the patient and thus are generally not considered treating physicians); *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988) (defining a "treating physician" as a physician "who has or had an ongoing treatment and physician-patient relationship with the individual").  The Second Circuit has held that a physician's opinion is entitled to less weight when the physician did not treat the claimant on an ongoing basis.  In *Mongeur v. Heckler*, the court emphasized that the opinion of a treating physician is given extra weight because of his unique position resulting from the

"continuity of treatment he provides and the doctor/patient relationship he develops."

722 F.2d at 1039 n.2 (2d Cir. 1983). By contrast, the court reasoned that a physician who examined a claimant only "once or twice" did not see the claimant regularly and thus did not develop a physician/patient relationship with him. *Id.* The Second Circuit concluded that such a physician's medical opinion was "not entitled to the extra weight of that of a 'treating physician.'" *Id.*; *see also* 20 C.F.R. § 416.927(d)(2) (an ALJ should generally "give more weight to" the opinion of a doctor who treated a claimant on an ongoing basis and thus could provide a "detailed, longitudinal picture of [the claimant's] medical impairment(s)," offering a more "unique perspective to the medical evidence" than provided by reports from "individual examinations, such as consultative examinations or brief hospitalizations"). Applied here, given that Dr. Fama examined Lasitter on only two occasions over a period of nineteen months, the ALJ did not err in giving less than controlling weight to her opinions.

Second, Lasitter's argument fails because substantial evidence supports the ALJ's determination that Dr. Fama's opinions were inconsistent with the medical evidence of record, including her own treatment record; and this was a proper reason to discredit Dr. Fama's opinions. The regulations provide that a treating physician's opinion must be given "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with the other substantial evidence in [the] case record*." 20 C.F.R. § 404.1527(c)(2) (emphasis added). Where an ALJ gives a treating physician opinion something less than "controlling weight," he must provide "good reasons" for doing so. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998);

*see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).  Clearly, "[c]onsistency" is a factor in deciding the weight accorded to a medical opinion, and it is proper to give less weight to a medical opinion that is "internally inconsistent."  *Michels v. Astrue*, 297 F. App'x 74, 75 (2d Cir. 2008); *see* 20 C.F.R. § 404.1527(c)(4).  Thus, the ALJ's rationale that Dr. Fama's opinions were entitled to less weight because they were internally inconsistent and inconsistent with the record as a whole, constituted a "good reason," if supported by substantial evidence.

After reviewing the record as a whole and Dr. Fama's treatment records in particular, the Court finds that substantial evidence supports the ALJ's determination that Dr. Fama's opinions are "inconsistent with the medical evidence of record, including her own record of treatment."  (AR 22.)  Dr. Fama first saw Lasitter for a rheumatology consultation in November 2009.  (AR 259-61.)  Upon examination, the Doctor noted that, although Lasitter reported significant fatigue with cognitive impairment, pain in various parts of her body, dry eyes, sore throat, breathing problems, acid reflux, and mild irritable bowel symptoms; she had full range of motion in her extremities, normal range of motion in her spine and neck without discomfort, 5/5 strength in all large muscle groups, only "[a] few" ("less than 11") fibromyalgia tender points, a nonantalgic gait, and negative straight leg raise bilaterally.  (AR 259-60.)  Dr. Fama ordered blood work, and thereafter recorded that Lasitter's antibody tests were "completely negative."  (AR 264.)  Dr. Fama's only diagnosis was chronic fatigue "with many features of chronic fatigue syndrome" and a Vitamin D deficiency; she stated that taking a higher dose of Vitamin D "[may] . . . help with [her] fatigue."  (AR 260.)  Nearly twenty months after this initial

examination, in June 2011, Dr. Fama saw Lasitter for a second time.  (AR 427-29.)  Dr.

Fama noted that, according to Lasitter, her symptoms had not changed since the earlier

visit.  On examination, however, the Doctor found more fibromyalgia tender points than

at the November 2009 examination.  (AR 429; *see also* AR 428 (reporting tender points

in the "upper back, chest wall, left lateral epicondyle, lower back, quadriceps[,] and

greater trochanters").)  Dr. Fama's assessment was that Lasitter had chronic fatigue and

chronic pain "with signs and symptoms consistent with fibromyalgia."  (AR 429.)

Thus, Dr. Fama's two examinations of Lasitter revealed basically normal results,

although Lasitter reported significant fatigue and many other miscellaneous symptoms,

some of them consistent with fibromyalgia.  Dr. Fama's opinion that Lasitter had

"frequent unexplained dizziness" (AR 421; *see also* AR 422 ("[r]arely drives due to

dizziness, feeling off-balance")) is not reflected in Dr. Fama's treatment notes; and

Lasitter denied dizziness on multiple occasions to other medical providers (*see, e.g.,* AR

220, 224, 227, 387).  Dr. Fama also found that Lasitter could "[n]ever" lift an object

weighing less than ten pounds (AR 418), yet Lasitter herself stated in a physical therapy

report that she could lift a grocery bag weighing ten pounds (but with some difficulty)

(AR 357).  Although Dr. Fama was given an opportunity to identify "the particular

medical or clinical findings (i.e., physical exam findings, x-ray findings, laboratory test

results, history, and symptoms including pain, etc.)" which supported her opinions, she

merely reiterated that Lasitter felt pain with certain activities or movements.  (AR 420-

21.)  As discussed above, however, the ALJ properly found that Lasitter was not entirely

credible with respect to reporting such severe levels of pain; and thus this was a weak

foundation for Dr. Fama's opinions.

Overall, the record contains several physical examinations resulting in normal

findings, similar to those recorded in Dr. Fama's treatment notes but inconsistent with Dr.

Fama's opinion that Lasitter had severe physical limitations.  (*See, e.g.,* AR 220-22, 225,

386-87.)  Moreover, there is some indication in these records that Lasitter's problems

were largely situational, caused by stress, an "unhealthy lifestyle pattern" (AR 220),

family and work problems, and "abusive situations" (AR 387)[2].  (*See also* AR 414

("[Lasitter] and boyfriend are currently out of work and are at risk of [being] evicted

from their [apartment] adding to [their] stress.").)  The record also contains medical notes

indicating that Lasitter's fibromyalgia symptoms were improving with medication, and

were stable.  (*See, e.g.,* AR 370 ("[u]sing . . . Cymbalta . . . which helped myalgia,

fatigue[,] and depression"), 389 ("[d]oing well on Cymbalta overall"), 433.)  Opining that

Lasitter had no medically determinable impairment, state agency consultants Dr.

Geoffrey Knisely and Dr. Ann Fingar summarized the medical record as follows: no

evidence of swelling, full range of motion of joints except mild decreased abduction with

normal passive range of motion, few (less than eleven) fibromyalgia tender points,

normal range of motion of spine, neurologically intact, non-antalgic gait, and negative

straight leg raising.  (AR 338, 344.)  Although Drs. Knisely and Fingar made their

opinions before Lasitter's 2011 fibromyalgia diagnosis, and thus the ALJ afforded

_____

[2]  The record reflects that Lasitter suffered a great deal of loss in the years prior to her alleged
disability onset date: she divorced her husband and had a falling out with her mother in 2005, and her
father committed suicide in 2007.  (AR 295.)  Also, in approximately 2010, her dog died; she was having
credit problems; she lost her job; and she lost her apartment.  (AR 295-96.)

"limited weight" thereto (AR 22), their summary of the medical record—including their notation that Lasitter had less than eleven "tender points of fibromyalgia" (AR 338, 344)—is accurate.

Importantly, for purposes of the disability analysis, the mere diagnosis of fibromyalgia is not particularly significant; it is the severity of the fibromyalgia symptoms and the limitations caused thereby that matter most.  S*ee Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003).  Lasitter asserts that Social Security Ruling ("SSR") 12-2p requires remand for the ALJ to reconsider her fibromyalgia.  But SSR 12-2p does not do away with the requirement that, once the ALJ finds that the claimant had fibromyalgia, he must determine whether that fibromyalgia, alone or in combination with other impairments, was disabling.  Rather, SSR 12-2p states:

> Once [a medically determinable impairment] is established, *we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work*.  If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12-2p, 2012 WL 3104869, at *5 (July 25, 2012) (emphasis added).  The Second Circuit has recognized that, although "fibromyalgia is 'a disease that eludes [objective] measurement,' mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability."  *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008) (quoting *Green-Younger*, 335 F.3d at 108) (citation

omitted). The court distinguishes between a claimant like the one in *Green-Younger*, whose doctor[3] diagnosed her fibromyalgia as "severe" and the cause of marked limitations in the claimant's activities of daily living, *id.* at 104; and a claimant like Lasitter, whose fibromyalgia was not described as severe by a physician who had an ongoing treatment relationship with her, who was able to engage in regular activities of daily living, and who the ALJ properly found to be not entirely credible.

The record reflects that, although Lasitter experienced pain and fatigue, her symptoms were controlled with medication; she did not require intensive treatment or hospitalization; she opted against following a physical therapy program and seeking a referral for pain management services; and she was able to engage in regular activities of daily living. The Second Circuit has explained that "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983); *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("The mere fact that working may cause pain or discomfort does not mandate a finding of disability."). The record here supports the ALJ's determination that Lasitter's impairments did not preclude any substantial gainful employment during the alleged disability period.

---

[3] Also significant, and distinguishable from this case, the claimant's physician in *Green-Younger* had a lengthy and involved treatment relationship with the claimant: at the time of the administrative hearing, the doctor had coordinated the claimant's care for over three years, during which time the claimant underwent numerous physical examinations and diagnostic procedures. *Green-Younger*, 335 F.3d at 107. By the time of the appeal, the doctor had treated the claimant for eight years. *Id.* at n.11.

## <u>Conclusion</u>

For these reasons, the Court DENIES Lasitter's motion (Doc. 6), GRANTS the

Commissioner's motion (Doc. 10), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 30th day of January, 2013.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge